TRINETTE G. KENT (State Bar No. 222020)
Lemberg Law, LLC
1333 Stradella Road
Los Angeles, CA 90077
Telephone: (480) 247-9644
Facsimile: (480) 717-4781
E-mail: tkent@lemberglaw.com

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Yandery Sanchez, *on behalf of herself and all others similarly situated,*<br><br>Plaintiff,<br><br>vs.<br><br>Kia Motors America, Inc.,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**(1) Violation of the Texas Deceptive Practices Act**<br>**(2) Breach of the Implied Warranty of Merchantability;**<br>**(3) Breach of Express Warranty; and**<br>**(4) Violation of the Magnuson-Moss Warranty Act**<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

Plaintiff, Yandery Sanchez, by undersigned counsel, brings the following complaint against Defendant Kia Motors America, Inc., and alleges, on her own behalf and on behalf of all those similarly situated, as follows:

## **INTRODUCTION**

1.     Plaintiff, Yandery Sanchez ("Plaintiff" or "Ms. Sanchez") brings this lawsuit on her own behalf and on behalf of a proposed class of past and present owners and lessees of defective 2020 Kia Telluride vehicles (the "Class Vehicles") designed, manufactured, marketed, distributed, sold, warranted, and serviced by Defendant Kia Motors America, Inc. ("Kia" or "Defendant").

2.     Plaintiff and the Class were damaged because the Class Vehicles contain defective windshields which cause the windshields to crack, chip and/or fracture.

3.     Specifically, beginning in 2019, if not before, Kia knew that the Class Vehicles contain one or more design and/or manufacturing defects that can cause the windshield to crack, chip and/or fracture (the "Windshield Defect" or the "Defect").

4.     Class Vehicle owners report that their windshields failed for no reason at all.  Others have reported windshield failure as a result of circumstances that would not cause a non-defective windshield to fail, such as a very slight impact.

5.     Defendant has admitted the existence of a defect.  However, rather than offer to fix the Class Vehicles free of charge, Defendant has instead fraudulently misrepresented the nature and scope of the defect, consistently denied valid warranty claims, and merely replaced defective windshields with other similarly defective

2

windshields.  The goal of this litigation is to remedy this fraudulent conduct.

6.    Indeed, because the replacement windshields provided by Defendant suffer from the same Defect, Class Vehicle owners have been required to replace their defective windshields multiple times.  For instance, the following owners have complained to the National Highway Traffic Safety Administration ("NHTSA") that their replacement windshields continue to suffer from the Windshield Defect:

- NHTSA Complaint, September 7, 2019, ID No. 11253922: **THIS IS MY SECOND REPORT. MY WINDSHIELD ON MY 2020 KIA TELLURIDE IS CRACKED AGAIN.** THIS TIME IT'S ON THE PASSENGER SIDE OF THE WINDSHIELD. IT'S A LONG CRACK THAT STARTS AT THE A PILLAR AND TRAVELS ACROSS THE WINDSHIELD. WHEN I GOT IN MY CAR TO GO SOMEWHERE I SAW THE CRACK. I AM THE ONLY DRIVER. I NEVER SAW OR HEARD ANYTHING HIT THE WINDSHIELD THIS TIME. IT COST 1500 DOLLARS TO REPAIR IT LAST TIME, WHICH WAS FOUR MONTHS AGO.ITS GOING TO GET EXPENSIVE IF THIS KEEPS UP. I HAVE NO IDEA HOW THIS OCCURRED.

- NHTSA Complaint, March 29, 2020, ID No. 11326531: WE PURCHASED THE NEW TELLURIDE IN DECEMBER, 2019. THE WINDSHIELD CRACKED AND THE CRACK RAN ACROSS HALF OF THE WINDSHIELD. KIA DID REPLACE THE WINDSHIELD WITHOUT A CHARGE. THIS WAS ONE IN FEBRUARY 2020. **OUR NEW WINDSHIELD NOW AND A BIG CHIP IN IT, ABOUT THE SIZE OF A PENCIL ERASER.** THERE IS LESS THAN 7000 MILES ON IT. THERE MUST BE A DEFECT OR QUALITY ISSUE IN THE WINDSHIELD GLASS THEY ARE USING. WE ARE IN OUR LATE 60'S. NO OFF READING OR RISKY DRIVING. WE WERE DRIVING ON THE INTERSTATE WHEN THE NEW CHIP HAPPENED.

- NHTSA Complaint, June 23, 2020, ID No. 11330351: WINDSHIELD CRACKED FROM CHIP THAT I HEARD HAPPEN ON THE HIGHWAY 3/6/2020. **THIS WINDOW IS AN OEM REPLACEMENT WINDOW FROM KIA. THE FIRST WINDSHIELD HAD THE**

3

1
2

**EXACT SAME THING HAPPEN** IN JULY 2019 WITHIN THE FIRST MONTH OF PURCHASING THE CAR.

3
4
5
6
7
8
9
10

- NHTSA Complaint, June 30, 2020, ID No. 11331695: I HAVE HAD MY KIA TELLURIDE EX 2020 FOR THE PAST 4 MONTHS. ON MONTH 3 ITS WINDSHIELD CRACKED WHILE DRIVING ON RIGHT LOWER SIDE AND CRACKS STARTED TO QUICKLY EXPAND NEEDING TO REPLACE THE WINDSHIELD THROUGH INSURANCE AND PAID 500$ DEDUCTIBLE. I NEVER ANYTHING HITTING THE WINDSHIELD AT THAT TIME. **AGAIN JUST A FEW DAYS AGO IN MONTH 4 OF OWNERSHIP WINDSHIELD GLASS HAS CHIPPED FROM TWO PLACES.** I NEVER SAW OR HEARD ANYTHING HITTING THE GLASS WHILE DRIVING AND I AM THE ONLY DRIVER.[1]

11
12
13
14
15
16
17
18
19
20
21
22
23
24

7.    In addition, in a November 4, 2019 letter which Defendant sent to some but not all owners of the Class Vehicles, it claimed that in some situations it would replace the windshields as part of a "goodwill gesture" (even though it should be replacing the defective windshields under its warranty).  However, when Plaintiff presented her vehicle to an authorized Kia dealership in January 2020 and referenced the letter, Kia, through its dealer, told Plaintiff that she would have to pay approximately $1,000 out of pocket to get a replacement and in any event, there were no replacement windshields available.  Numerous other owners have likewise complained to NHTSA that they have had to pay out of pocket for replacement windshields even after November 4, 2019:

25
26

- NHTSA Complaint, February 21, 2020, ID No. 11310546: MY WINDSHIELD HAS TWO CRACKS IN THAT IMPAIRS VISIBILITY.

27
28

---

[1] The above NHTSA complaints are only the tip of the iceberg regarding complaints about the Windshield Defect.  Dozens of additional NHTSA complaints concerning the Windshield Defect *pre-dating* Plaintiff's purchase of her vehicle are reproduced below.

4

IT WAS NOT HIT BY DEBRIS FROM THE ROAD. THE BOTH START FROM THE EDGE OF THE GLASS AND SPREAD ACROSS THE WINDSHIELD. **I CONTACTED THE LOCAL DEALERSHIP AND CAN HAVE IT REPLACED FOR 800.00!!!!!!** I THINK THIS SHOULD BE A RECALL DUE TO IT BEING A WIDESPREAD ISSUE.

- NHTSA Complaint, March 23, 2020, ID No. 11319062: THE WINDSHIELD HAS CRACKED ON BOTH SIDES AND HAS EXTENDED BEYOND REPAIR. THIS APPEARED TO HAPPEN DURING NORMAL DRIVING CONDITIONS. **THE DEALER WANTS TO CHARGE US ABOUT $800 TO REPAIR.** THIS SEEMS LIKE A ONGOING PROBLEM WITH OTHERS AND WE WANT THIS REPORTED AS WELL.

8.      Further, the Windshield Defect can and often does manifest immediately after Class Members take ownership of the vehicles.  Plaintiff experienced the defect within months of purchasing her new vehicle.  One owner complained that she experienced the Windshield Defect *on her way home from purchasing her vehicle*:

- NHTSA Complaint, October 18, 2019, ID No. 11269493: I HAD JUST PURCHASED MY 2020 KIA TELLURIDE FROM THE DEALERSHIP. WHILE DRIVING HOME I HEARD A LOUD SOUND THAT STARTLED ME AND MADE ME JUMP. **I THEN NOTICED THAT MY WINDSHIELD HAD CRACKED LESS THAN AN HOUR INTO OWNING THE CAR**. I WAS DRIVING 30 MPH WHICH ON A CITY STREET.

9.      The Windshield Defect poses an extreme safety hazard to drivers, passengers, and pedestrians because a spontaneously shattering or cracking windshield can impair the driver's view, district the driver, and result in dislodged glass that can injure drivers, passengers and pedestrians.

10.      In addition, the windshield is a vital component of a vehicle's safety

5

restraint system, which also includes airbags and seatbelts. These safety features, including the windshield, are all part of a safety network. Each individual component of this network is dependent on the others functioning properly. Thus, if there is a compromise or weakness in just one aspect of the network, the likelihood of other parts not working properly is increased. All components of a vehicle's safety restraint system are designed to work together to keep vehicle occupants within the relative safety of the passenger compartment during collision or roll over.

11.     To that end, the windshield provides support that a passenger-side airbag needs to deploy properly. If the windshield is compromised, the airbag may be useless in a collision. Similarly, the windshield provides much of the roof support for most vehicles. As a result, the windshield is a crucial component in preserving the structural integrity of the vehicle's passenger compartment during roll-overs in that the windshield supports the roof, thereby keeping the roof from collapsing and crushing the driver and passengers.

12.     In addition to these safety issues, the cost to repair the Windshield Defect can be exorbitant – Plaintiff herself was told a replacement windshield would cost approximately $1,000 – requiring consumers to pay significant sums over the life of their Class Vehicles.

13.     As set forth below, Defendant knew the Class Vehicles were defective and not fit for their intended purpose of providing consumers with safe and reliable transportation at the time of the sale and thereafter. Defendant has actively concealed

6

the true nature and extent of the Windshield Defect from Plaintiff and the other Class Members, and failed to disclose it to them, at the time of purchase or lease and thereafter.

14.     Had Plaintiff and the Class Members known about the Windshield Defect, they would not have purchased the Class Vehicles or would have paid substantially less for them.

15.     Despite being notified of the Windshield Defect from, among other things, pre-production testing, numerous consumer complaints (both to NHTSA and on Telluride enthusiast websites), warranty data, and dealership repair orders, Defendant has not recalled the Class Vehicles to repair the Windshield Defect, has not offered its customers a suitable repair or replacement free of charge, and has not offered to reimburse all Class Vehicle owners and leaseholders the costs they incurred relating to diagnosing and repairing the Windshield Defect.

16.     Kia knew of and concealed the Windshield Defect that is contained in every Class Vehicle, along with the attendant dangerous safety problems and associated repair costs, from Plaintiff and the other Class Members both at the time of sale and repair and thereafter.

17.     As a result of their reliance on Defendant's omissions and/or misrepresentations, owners and/or lessees of the Class Vehicles have suffered ascertainable loss of money, property, and/or loss in value of their Class Vehicles.

18.     Plaintiff has given Kia reasonable opportunities to cure the Windshield

7

Defect, but Kia has been unable to do so within a reasonable time.

19. Kia's conduct is in violation of the Texas Deceptive Practices Act and constitutes a breach of express and implied warranties and the Magnuson-Moss Warranty Act.

20. Kia has and will continue to benefit from its unlawful conduct – by selling more vehicles, at a higher price, and avoiding warranty obligations – while consumers are harmed at the point of sale as their vehicles continue to suffer from the unremedied Windshield Defect.

21. To remedy Kia's unlawful conduct, Plaintiff, on behalf of the proposed class members, seeks damages and restitution from Kia, as well as notification to class members about the defect.

## PARTIES

22. Plaintiff, Yandery Sanchez, is an adult individual residing in Houston, Texas.

23. Defendant Kia Motors America, Inc. is a California corporation with a principal place of business at 111 Peters Canyon Road, Irvine, California 92606-1790.

24. Defendant Kia Motors America, Inc., through its various entities, designs, manufactures, markets, distributes, services, repairs, sells, and leases passenger vehicles, including the Class Vehicles, nationwide. Defendant Kia Motors America, Inc. is the warrantor and distributor of the Class Vehicles in the United States.

8

**1**

**JURISDICTION AND VENUE**

**2**

25.    This Court has subject matter jurisdiction over this action pursuant to 28

**3**

**4**

U.S.C. § 1332(d) of the Class Action Fairness Act of 2005 because: (i) there are 100

**5**

or more class members, (ii) there is an aggregate amount in controversy exceeding

**6**

**7**

$5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because

**8**

Plaintiff and Kia are citizens of different states.

**9**

26.    This Court also has subject matter jurisdiction over this action pursuant

**10**

**11**

to 28 U.S.C. § 1331 because Plaintiff presents a claim under the federal Magnuson-

**12**

Moss Warranty Act, 15 U.S.C. § 2301, et seq.  As to the state law claims, this Court

**13**

has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

**14**

27.    Personal jurisdiction and venue are proper in this District as Defendant is

**15**

**16**

headquartered in this District.

**17**

**PLAINTIFF'S INDIVIDUAL ALLEGATIONS**

**18**

**19**

28.    On November 14, 2019, Plaintiff purchased a new 2020 Kia Telluride,

**20**

Vehicle Identification Number 5XYP64HC2LG056944 (hereafter the "Sanchez

**21**

**22**

Vehicle") from Fredy Kia in Houston, Texas, an authorized dealership of the

**23**

Defendant.

**24**

29.    Prior to the sale, Fredy Kia assured Ms. Sanchez that the vehicle was

**25**

**26**

accompanied by Kia's New Vehicle Limited Warranty[2] and was free from defects of

**27**

**28**

---

[2] A copy of the New Vehicle Limited Warranty is available at
https://www.kia.com/us/content/dam/kia/us/en/images/warranty/manual/general-warranty-and-consumer-

9

workmanship.  Fredy Kia additionally assured Plaintiff that the car was safe and reliable.

30.    However, in or around January 2020, Plaintiff's Sanchez Vehicle suffered from the Windshield Defect.

31.    Specifically, after parking her car at home, Plaintiff went out to her car and noticed for the first time that the Sanchez Vehicle's windshield contained a small crack even though she did not observe anything impact the windshield.  The crack quickly expanded to a much larger area and additional cracks have formed on the Sanchez Vehicle's windshield.

32.    Thereafter, Plaintiff researched online to determine if Kia had issued a recall regarding the Windshield Defect.  As part of her research, Plaintiff came across a copy of a November 4, 2019 letter that Kia had sent to some but not all owners of the Class Vehicles (Kia did not send the letter to Plaintiff), where Kia stated that it had "identified that in some instances, customers have reported windshield chipping following by extensive cracking within a short period of time, thereby preventing repair of the chip" (the "Goodwill Letter").  The Goodwill Letter further stated that "[i]n an effort to ensure customer satisfaction, Kia will replace your Telluride's windshield as a goodwill gesture should it chip and crack thereby preventing repair of

info/2020_warranty.pdf (last visited July 30, 2020).  The warranty provides, *inter alia,* that "all components of your new Kia Vehicle are covered for 60 months/60,000 miles from the Date of First Service, whichever comes first (Basic Limited Warranty Coverage)." *Id.*  The "Date of First Service" "means the first date the Kia Vehicle is delivered to the first retail purchaser, is leased or is placed into service as a company vehicle use (e.g., as a demonstrator, rental or fleet vehicle), whichever is earliest." *Id.*

10

the chip while we continue to investigate this issue" and advised that customers should contact a Kia dealer and "[b]ring this letter to the appointment and provide it to the dealer for reference."[3]

33. On or about January 29, 2020 – well within the New Vehicle Limited Warranty period – Plaintiff physically brought the Sanchez Vehicle to Kia Fredy to get it to repair the Windshield Defect. During the visit, Plaintiff mentioned the Goodwill Letter and asked Fredy Kia to replace the windshield because of the Windshield Defect.

34. In response, Fredy Kia told Plaintiff (1) the Goodwill Letter did not apply to her; (2) she would have to pay approximately $1,000 out-of-pocket to get a new replacement windshield; and (3) Fredy Kia did not currently have any replacement windshields. Fredy Kia did not repair the Windshield Defect.

35. Thereafter, on or about March 3, 2020, Plaintiff placed a follow-up telephone call to Fredy Kia and again asked it to replace her vehicle's Windshield Defect. Fredy Kia once again told Plaintiff that she would have to pay out-of-pocket for a replacement windshield.

36. On June 2, 2020, Plaintiff, through her counsel, sent a letter to Kia advising it that the Sanchez Vehicle suffered from the Windshield Defect and still had not been repaired.

37. At all times, Plaintiff has driven her vehicle in a foreseeable manner and

---

[3] A copy of the letter is attached as Exhibit A.

11

in the manner in which it was intended to be used.

## FACTUAL ALLEGATIONS

**The Windshield Defect and Kia's "Customer Satisfaction Initiative" / Goodwill Letter**

38.     In the spring of 2019 Kia released the brand-new Telluride, a mid-size crossover SUV, as a 2020 model.

39.     Since then it has sold tens of thousands of Class Vehicles for model year 2020 and 2021.

40.     The Class Vehicles suffer from the Windshield Defect, which causes the Class Vehicles' front windshield to crack, chip and/or fracture for no reason at all and/or under circumstances that would not cause non-defective windshields to similarly fail.  The Windshield Defect presents a safety hazard that renders the Class Vehicles unreasonably dangerous to consumers due to, *inter alia*, the impact of the Defect on visibility as well as the Class Vehicles' structural integrity, and the potential for injury.

41.     On October 10, 2019 Car and Driver published an article discussing the unusually high number of Kia Telluride owners who had complained to NHTSA about the Windshield Defect.[4]  The article included a response from a Kia spokesperson stating that "Kia Motors America places a priority on safety and takes reported customer concerns seriously. Warranty claims involving damage to any Kia

---

[4] https://www.caranddriver.com/news/a29427271/kia-telluride-Kia-forester-windshield-defects-complaints/ (last visited July 30, 2020).

12

vehicle glass are reviewed on a case-by-case basis as varying influences, such as damage from road debris and other factors beyond Kia's control, may lead to breakage of the windshield glass."

42.    On or about November 14, 2019, Kia sent the Goodwill Letter to some but not all owners of the Class Vehicles advertising its "Customer Satisfaction Initiative" and stating that in some scenarios it would replace defective windshields as a "goodwill gesture."  A copy of the letter is attached as Exhibit A.

43.    The Goodwill Letter is a wholly inadequate and illusory sham remedy for the Windshield Defect.

44.    First, thousands of class members, including Plaintiff, were not provided a copy of the Goodwill Letter.[5]

45.    Second, the Letter falsely suggests that the Windshield Defect is not covered under the New Vehicle Limited Warranty and is caused by an outside influence, rather than an inherent manufacturing or design defect with the windshield, where it says "Your vehicle's 2020 warranty specifically excludes coverage for broken, chipped, scratched or damaged glass due to outside influence." Goodwill Letter (emphasis supplied).  Indeed, it claims that it "will replace your Telluride's windshield as a goodwill gesture should it chip and crack thereby preventing repair of

---

[5] *See, e.g.,* https://tellurideforum.org/threads/the-ultimate-telluride-windshield-chip-cracking-discussion.2341/page-10 (last visited July 30, 2020) (commenter complained on December 9, 2019 that they "bought my Telluride end of March and have yet to receive anything in the mail about this and see some people saying they bought there's 3 weeks ago and have already got the letter mailed to them. I have 4 or 5 small chips in the windshield and in the Atlanta area.").

the chip while we continue to investigate this issue," not pursuant to its warranty. *Id.* (emphasis supplied).

46.     Third, in practice Kia refuses to repair or replace the Windshield Defect when given a reasonable opportunity to do so.  Kia refused to repair or replace the Sanchez Vehicle's windshield when Plaintiff brought her vehicle to a Kia authorized dealership and referenced the Goodwill Letter.  Likewise, as noted *supra*, multiple consumers have complained to NHTSA that Kia dealers continued to charge them out-of-pocket for repairs months after the Goodwill Letter was sent out:

- NHTSA Complaint, February 21, 2020, ID No. 11310546: MY WINDSHIELD HAS TWO CRACKS IN THAT IMPAIRS VISIBILITY. IT WAS NOT HIT BY DEBRIS FROM THE ROAD. THE BOTH START FROM THE EDGE OF THE GLASS AND SPREAD ACROSS THE WINDSHIELD. **I CONTACTED THE LOCAL DEALERSHIP AND CAN HAVE IT REPLACED FOR 800.00!!!!!!** I THINK THIS SHOULD BE A RECALL DUE TO IT BEING A WIDESPREAD ISSUE.

- NHTSA Complaint, March 23, 2020, ID No. 11319062: THE WINDSHIELD HAS CRACKED ON BOTH SIDES AND HAS EXTENDED BEYOND REPAIR. THIS APPEARED TO HAPPEN DURING NORMAL DRIVING CONDITIONS. **THE DEALER WANTS TO CHARGE US ABOUT $800 TO REPAIR.** THIS SEEMS LIKE A ONGOING PROBLEM WITH OTHERS AND WE WANT THIS REPORTED AS WELL.

47.     Further, upon information and belief when vehicles are brought in for repair, Defendant's dealers search for any excuse to deny coverage, often claiming that an impact caused the failure, notwithstanding the fact that the customer witnessed no impact, there is no visual evidence of an impact, or that any impact was so slight it

14

should not have caused the windshield to fail.   On information and belief, Defendant's dealers' systematic denial of valid coverage claims is part of a concerted effort orchestrated by Defendant to minimize the cost of warranty claims and its "Customer Satisfaction Initiative."

48.    Moreover, on information and belief, when windshield repairs are performed by Defendant's dealers (for charge, or free of charge under the New Vehicle Limited Warranty or under the warranty extension, or as goodwill, as the case may be), defective windshields are merely replaced with similarly defective windshields.  See the following representative NHTSA complaints:

- NHTSA Complaint, September 7, 2019, ID No. 11253922: **THIS IS MY SECOND REPORT. MY WINDSHIELD ON MY 2020 KIA TELLURIDE IS CRACKED AGAIN.** THIS TIME IT'S ON THE PASSENGER SIDE OF THE WINDSHIELD. IT'S A LONG CRACK THAT STARTS AT THE A PILLAR AND TRAVELS ACROSS THE WINDSHIELD. WHEN I GOT IN MY CAR TO GO SOMEWHERE I SAW THE CRACK. I AM THE ONLY DRIVER. I NEVER SAW OR HEARD ANYTHING HIT THE WINDSHIELD THIS TIME. IT COST 1500 DOLLARS TO REPAIR IT LAST TIME, WHICH WAS FOUR MONTHS AGO.ITS GOING TO GET EXPENSIVE IF THIS KEEPS UP. I HAVE NO IDEA HOW THIS OCCURRED.

- NHTSA Complaint, March 29, 2020, ID No. 11326531: WE PURCHASED THE NEW TELLURIDE IN DECEMBER, 2019. THE WINDSHIELD CRACKED AND THE CRACK RAN ACROSS HALF OF THE WINDSHIELD. KIA DID REPLACE THE WINDSHIELD WITHOUT A CHARGE. THIS WAS ONE IN FEBRUARY 2020. **OUR NEW WINDSHIELD NOW AND A BIG CHIP IN IT, ABOUT THE SIZE OF A PENCIL ERASER.** THERE IS LESS THAN 7000 MILES ON IT. THERE MUST BE A DEFECT OR QUALITY ISSUE IN THE WINDSHIELD GLASS THEY ARE USING. WE ARE IN OUR LATE

15

60'S. NO OFF READING OR RISKY DRIVING. WE WERE DRIVING ON THE INTERSTATE WHEN THE NEW CHIP HAPPENED.

- NHTSA Complaint, June 23, 2020, ID No. 11330351: WINDSHIELD CRACKED FROM CHIP THAT I HEARD HAPPEN ON THE HIGHWAY 3/6/2020. **THIS WINDOW IS AN OEM REPLACEMENT WINDOW FROM KIA. THE FIRST WINDSHIELD HAD THE EXACT SAME THING HAPPEN** IN JULY 2019 WITHIN THE FIRST MONTH OF PURCHASING THE CAR.

- NHTSA Complaint, June 30, 2020, ID No. 11331695: I HAVE HAD MY KIA TELLURIDE EX 2020 FOR THE PAST 4 MONTHS. ON MONTH 3 ITS WINDSHIELD CRACKED WHILE DRIVING ON RIGHT LOWER SIDE AND CRACKS STARTED TO QUICKLY EXPAND NEEDING TO REPLACE THE WINDSHIELD THROUGH INSURANCE AND PAID 500$ DEDUCTIBLE. I NEVER ANYTHING HITTING THE WINDSHIELD AT THAT TIME. **AGAIN JUST A FEW DAYS AGO IN MONTH 4 OF OWNERSHIP WINDSHIELD GLASS HAS CHIPPED FROM TWO PLACES.** I NEVER SAW OR HEARD ANYTHING HITTING THE GLASS WHILE DRIVING AND I AM THE ONLY DRIVER.

49.     Kia had and has a duty to fully disclose the true nature of the Windshield Defect and the associated repair costs to Class Vehicle owners, among other reasons, because the Defect poses an unreasonable safety hazard; because Kia had and has exclusive knowledge or access to material facts about the Class Vehicles' front windshield that were and are not known to or reasonably discoverable by Plaintiff and the other Class Members; and because Kia has actively concealed the Windshield Defect from its customers.  Because the windshield contained in each Class Vehicle is defective, each Class Vehicle windshield should be replaced by Kia free of charge regardless of whether the windshield has failed, or the facts and circumstances

16

surrounding any failure.

**Kia's Knowledge of the Defect**

50.    Kia became aware of the Windshield Defect in early 2019, if not before, through sources not available to Plaintiff and Class Members, including, but not limited to, pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made exclusively to Kia's network of dealers and directly to Kia, aggregate warranty data compiled from Kia's network of dealers, testing conducted by Kia in response to consumer complaints, and repair order and parts data received by Kia from Kia's network of dealers.

51.    During the pre-release process of designing, manufacturing, engineering, and testing the Class Vehicles which would necessarily have taken place prior to 2019, Kia, directly and/or through its agents or affiliated companies in the supply chain, necessarily would have gained comprehensive and exclusive knowledge about the Class Vehicle's windshields: the types and properties of materials used to make them, including their durability and whether those materials would weaken over time regardless of wear and use; the basic engineering principles behind their construction; the forces and stresses the windshields would face; when and how the windshields would fail; and the cumulative and specific impacts on the windshields caused by wear and use, the passage of time, and environmental factors.

52.    An adequate pre-release analysis of the design, engineering, and

17

manufacture of the windshields used for the Class Vehicles would have revealed to

Kia that the windshields were insufficiently strong and durable for the intended use.

Thus during the pre-release design stage of the Class Vehicles, Kia would have known

that the  windshield chosen for the Class Vehicles was defective and would pose a

safety risk to owners/lessees and the motoring public.

53.     Upon information and belief, Kia also would have known about the

Windshield Defect because of the higher than expected number of replacement

windshields ordered from Kia, which should have alerted Kia that this was a defective

part.  Upon information and belief, Kia service centers use Kia replacement parts that

they order directly from Kia.  Therefore, Kia would have detailed and accurate data

regarding the number and frequency of replacement part orders, including

replacement windshields.  The ongoing sales of replacement windshields was known

to Kia, and would have alerted Kia that its windshields were defective and posed a

safety risk early on.

54.     Kia also knew about the Windshield Defect because numerous consumer

complaints regarding windshield failure were made directly to Kia. The large number

of complaints, and the consistency of their descriptions of windshield failure alerted

Kia to this serious Defect affecting the Class Vehicles.  The full universe of

complaints made directly to Kia about the Windshield Defect is information presently

in the exclusive custody and control of Kia and is not yet available to Plaintiff prior to

discovery.  However, upon information and belief, many Class Vehicle owners

18

complained directly to Kia and Kia dealerships and service centers about the repeated windshield failures their Vehicles experienced.

55.    Kia's own Goodwill Letter – which was dated November 4, 2019, before Plaintiff purchased her vehicle on November 14, 2019 – acknowledges that by that point Kia had already performed an investigation regarding the Windshield Defect. See Exhibit A (Kia purported to offer "goodwill" windshield replacement "while we continue to investigate this issue.").

**The NHTSA Complaints and Online Discussions of the Defect:**

56.    Upon information and belief, thousands of purchasers and lessees of the Class Vehicles have experienced the Windshield Defect.  The below example complaints, filed by consumers with the NHTSA and posted on the Internet, which on information and belief Kia actively monitored during the relevant time period, demonstrate that the Defect is widespread and dangerous and that Kia has known about the defect at all relevant times.

- NHTSA Complaint, July 11, 2019, ID No. 11231136:  WE BOUGHT OUR 2020 KIA TELLURIDE 7-3-2019 & ON 7-11-2019 OUR WINDSHIELD BROKE FROM A SMALL ROCK WHILE DRIVING 35 MPH TODAY FROM A PASSING CAR. I HAVE HEARD OF 100S OF OTHER CUSTOMERS HAVING THE SAME ISSUE WITH THESE INFERIOR WINDSHIELD WINDOWS WITH POOR UNSAFE PRODUCTION.

- NHTSA Complaint, July 18, 2019, ID No. 11233151: I HAVE AN ISSUE WITH THE GLASS QUALITY/DESIGN. IN THE FIRST TWO WEEKS (5/13/19) MY RIGHT PASSENGER WINDOW CRACKED. I DID HEAR A VERY SLIGHT SOUND (LIKE A WATER BOTTLE EXPANDING) BUT DIDN'T SEE ANYTHING. WITHIN AN HOUR, THE CRACK

OCCURRED. THERE WAS A VERY SMALL 'DING' BUT CONTINUED TO BREAK. I REPAIRED IT WITH MY INSURANCE.

ON 7/16 I PARKED AT WORK AS USUAL. WHEN I RETURNED TO MY CAR, MY FRONT WINDSHIELD HAD A 6-7 INCH CRACK. I COULD NOT SEE AN IMPACT SITE. THE CRACK IS UP AROUND 10 HIGH AND NOW SPLITTING TO THE LEFT ACROSS. WE WERE ABLE TO SEE WHAT AMOUNTS TO A 'SCRATCH' TO THE TOUCH. IT IS NO LARGER THAN THE TIP OF A SHARP PENCIL. I UNDERSTAND DEBRIS HITTING GLASS MAY RENDER A CRACK, BUT TO THIS DEGREE SEEMS TO BE A BIGGER ISSUE

I AM VERY CONCERNED ABOUT THE QUALITY AND DO NOT UNDERSTAND WHY I HAVE HAD THESE TWO ISSUES WITH VERY LITTLE IMPACT TO THE GLASS. IN PREVIOUS CARS I HAVE HAD HUGE ROCKS HIT AND ENDED UP WITH SCRATCHED/DINGED GLASS. WITHOUT SHATTERS, CRACKS. I RESEARCHED MANY WEBSITES AND DEALERS AND I AM SEEING THIS IS A COMMON ISSUE.

- NHTSA Complaint, July 23, 2019, ID No. 11234140: SMALL PEBBLE HIT CAR WINDSHEILD ON TOP LEFT CORNER. PLANNING ON PULLING OVER TO ACCESS SITUATION. THEN NOTICE A CRACK THAT WOULD NOT STOP UNTIL IT REACHED THE REVIEW MIRROR. I CALLED KIA CORPORATE TO REPORT AND THEY ARE AWARE THAT THE 2020 TELLURIDE ARE HAVING WINDSHIELD CRACKING PROBLEMS BUT WILL NOT REPAIR IF CAUSED BY PEBBLE. ONLY IF STRESS CRACK. I HAVE HEARD OF TO MANY PROBLEMS WITH THE 2020 TELLURIDE WINDSHIELD AND THINK THEY NEED TO INVESTIGATE ISSUE FURTHER FOR SAFETY REASONS.

- NHTSA Complaint, July 24, 2019, ID No. 11234353: HAD VEHICLE LESS THEN A MONTH AND NOTICED A CRACK IN THE WINDSHIELD. NEVER HEARD ANYTHING HIT THE WINDSHIELD, CRACK JUST SHOWED UP.

- NHTSA Complaint, July 30, 2019, ID No. 11240590: AS I WAS DRIVING DOWN THE HIGHWAY TODAY, A SMALL ROCK CAME

UP AND HIT MY WINDSHIELD. IT WAS VERY SMALL AND SHOULD NOT HAVE DAMAGED MY WINDSHIELD. I ENDED UP WITH A LARGE CRACK IN MY WINDSHIELD.

- <u>NHTSA Complaint, August 5, 2019, ID No. 11241855</u>: THE WINDSHIELD BROKE AND I DID NOT SEE ANYTHING HIT IT

- <u>NHTSA Complaint, August 6, 2019, ID No. 11242151</u>: FRONT WINDSHIELD IS CHIPPED. HAPPENED OVERNIGHT WHILE VEHICLE WAS PARKED IN MY DRIVEWAY.

- <u>NHTSA Complaint, August 7, 2019, ID No. 11242200</u>: WINDSHIELD CRACKED ON DAY 1 BEFORE EVEN TAKING DELIVERY OF CAR.

NOT A SAFE WINDSHIELD TO DRIVE WITH.

- <u>NHTSA Complaint, August 8, 2019, ID No. 11242644</u>: DRIVING ON HIGHWAY AND DID NOT EVEN HEAR OR SEE ANYTHING HIT THE WINDSHIELD. IF IT DID IT WAS MINOR AND SHOULD NOT HAVE CAUSED THE DAMAGE OF A CRACK THAT SPREAD ACROSS THE WINDSHIELD. I HAVE DRIVEN A 2018 FORD EXPLORER , 2016 GMC YUKON, AND 2019 GMC ACADIA WHEN SOMETHING HAD HIT THE WINDSHIELD THAT CAN BE SEEN AND HEARD WITH BARELY ANY DAMAGE OR DAMAGE THAT IS SIMPLY FILLED/SEALED. PLEASE REVIEW TO SEE IF OTHER COMPLAINTS SIMILAR TO THIS ARE IN THE DATABASE FOR THIS NEW ENTRY 2020 KIA TELLURIDE. I LIKE EVERYTHING ELSE ABOUT THIS VEHICLE BUT THIS. THEY ALSO STATED IT WOULD BE 2-8 WEEKS BEFORE A WINDSHIELD WILL BE AVAILABLE TO INSTALL FROM KIA.

- <u>NHTSA Complaint, August 9, 2019, ID No. 11242845</u>: CHIP AND CRACK IN WINDSHIELD. UNSURE WHEN IT OCCURRED, BUT I NEVER HEARD SOMETHING HIT WINDSHIELD. MOST LIKELY IT HAPPENED WHILE CAR WAS PARKED IN PARKING LOT.

- <u>NHTSA Complaint, August 16, 2019, ID No. 11244483</u>: FIRST ROADTRIP IN VEHICLE NOTICED A TINY CHIP IN THE WINDSHIELD IN THE LOWER LEFT CORNER WHILE REFUELING. I DO NOT RECALL HEARING OR SEEING ANYTHING HIT THE

WINDSHIELD WHILE DRIVING. REACHED DESTINATION AND THE NEXT MORNING I WALKED OUT TO MY VEHICLE TO FIND A CRACK FROM THE TINY CHIP LOCATION ALL THE WAY TO THE MIDDLE OF THE WINDSHIELD. I AM TOLD WINDSHIELD FOR THIS VEHICLE IS ON BACKORDER AND HAVE BEEN WAITING OVER A MONTH FOR A REPLACEMENT. CURRENT ESTIMATE FOR REPLACEMENT IS SECOND WEEK IN SEPTEMBER.

• NHTSA Complaint, August 21, 2019, ID No. 11245405: CRACKED WINDSHIELD. A PEBBLE HIT TO WINDSHIELD JUST BELOW THE FRONT FACING CAMERA AT 75 MPH SPEED. NO IMMEDIATE CRACK, ONLY CHIP. CAR PARKED OUTSIDE AT TEXAS HEAT (+100F) AND CRACK SPREAD ALMOST THROUGH WINDSHIELD WITHIN 48 H.

• NHTSA Complaint, August 23, 2019, ID No. 11246015: AFTER OWNING THE VEHICLE FOR JUST TWO MONTHS, WHILE DRIVING ON THE HIGHWAY A SMALL PARTICLE STRUCK THE WINDSHIELD AND MADE A CHIP THE SIZE OF A NICKEL. A FEW MILES DOWN THE HIGHWAY THE SAME INCIDENT HAPPENED MAKING A CRACK THAT IS SPIDERING THE SIZE OF A HALF DOLLAR. SPOKE WITH THE KIA DEALER TO REPORT THE ISSUE. THEY DO NOT HAVE ANY WINDSHIELD RECALLS AT THIS TIME.

• NHTSA Complaint, August 31, 2019, ID No. 11252538: IT SEEMS AS IF THE WINDSHIELDS ON THE KIA TELLURIDE ARE SUB PAR. THERE IS AN ABUNDANCE OF CRACKED WINDSHIELDS WITH THIS VERY NEW CAR, MORE THAN AVERAGE. MY OWN WINDSHIELD OBTAINED A STARBURST CRACK RIGHT IN THE LINE OF VISION FOR THE DRIVER. BEING IN ALASKA, I EXPECT THIS TO QUICKLY SPREAD. WE HEARD A SMALL TAP PRIOR TO THE WINDSHIELD CRACKING WHILE WE WERE DRIVING. MAYBE SOMETHING TO LOOK INTO.

• NHTSA Complaint, September 7, 2019, ID No. 11253920: I PURCHASED THE 2020 KIA TELLURIDE ON 04102019. ON 050319 A SMALL ROCK HIT MY WINDSHIELD IN THE MIDDLE OF THE DRIVERS VIEW. I WAS ON AN INTERSTATE TRAVELING 65 MPH. THE WINDSHIELD HAD A DEEP CHIP AND IT SPIDERWEBBED OUT. THE WINDSHIELD WAS REPLACED. ON 09072019 I GOT INTO MY

KIA AND ON THE PASSENGER SIDE A LARGE CRACK IS VISIBLE FROM THE A PILLAR ABOUT 10 INCHES LONG. I NEVER HEARD OR SAW ANYTHING HOT THE WINDSHIELD. I AM THE ONLY DRIVER. IT WILL HAVE TO BE REPLACED AGAIN.

- NHTSA Complaint, September 7, 2019, ID No. 11253922: THIS IS MY SECOND REPORT. MY WINDSHIELD ON MY 2020 KIA TELLURIDE IS CRACKED AGAIN. THIS TIME IT'S ON THE PASSENGER SIDE OF THE WINDSHIELD. IT'S A LONG CRACK THAT STARTS AT THE A PILLAR AND TRAVELS ACROSS THE WINDSHIELD. WHEN I GOT IN MY CAR TO GO SOMEWHERE I SAW THE CRACK. I AM THE ONLY DRIVER. I NEVER SAW OR HEARD ANYTHING HIT THE WINDSHIELD THIS TIME. IT COST 1500 DOLLARS TO REPAIR IT LAST TIME, WHICH WAS FOUR MONTHS AGO.ITS GOING TO GET EXPENSIVE IF THIS KEEPS UP. I HAVE NO IDEA HOW THIS OCCURRED.

- NHTSA Complaint, September 10, 2019, ID No. 11254357: DRIVING ON A CITY STREET, I NOTICED A TINY CRACK COMING DOWN FROM THE TOP OF MY WINDSHIELD. BY THE TIME I GOT HOME (10 MINUTES), IT WAS SPREAD ACROSS THE ENTIRETY OF MY WINDSHIELD.

  I'BE BEEN WAITING SINCE JUNE FOR A REPLACEMENT WINDSHIELD.

- NHTSA Complaint, September 13, 2019, ID No. 11255266: WHILE DRIVING DOWN THE HIGHWAY GOING MAYBE 45 MPH, SOMETHING FLEW UP AND HIT THE WINDSHIELD CAUSING A LARGE CHIP AND SPIDERWEB TO FORM IMMEDIATELY. WHATEVER HIT THE WINDSHIELD WAS SO SMALL I NEVER SAW IT. THIS HAS HAPPENED PLENTY OF OTHER TIMES IN OTHER VEHICLES WITHOUT CAUSING ANY DAMAGE.

- NHTSA Complaint, September 17, 2019, ID No. 11256193: WINDSHIELD STRUCK (MINOR WITH MINIMAL DEPTH PENETRATION) BY MATERIAL RUNNING ON INTERSTATE. WITHIN 15 MINUTES, CRACK BEGAN AND WAS OVER 16". VEHICLE PARKED FOR 8 DAYS. WINDSHIELD HAS CRACK OVER 3' LONG NOW. WINDSHIELD STAR SHOULD'VE BEEN QUICK

EASY FIX INSTEAD THE WINDSHIELD IS EITHER FAULTY OR INSTALLED IN BIND.

- NHTSA Complaint, October 2, 2019, ID No. 11265648: WHILE DRIVING MY 2020 TELLURIDE I HEARD AN ODD SOUND ON THE PASSENGER SIDE OF THE VEHICLE AND NOTICED A SMALL CRACK DEVELOPING ON THE PASSENGER SIDE OF WINDSHIELD. IT STARTED FROM ABOUT MIDWAY HEADING HORIZONTALLY AND THEN MADE A CURVE UPWARD AS I DROVE. THE CRACK IS AT LEAST 18 INCHES LONG. THERE IS NO VISIBLE DAMAGE OR MARKINGS OF ANYTHING HITTING THE WINDSHIELD NOR DID I NOTICE ANYTHING STRIKE THE WINDSHIELD. THE CRACK ORIGINATES UNDERNEATH THE MOLDING AND APPEARS TO BE A DEFECT. WHEN THE CRACK STARTED I WAS TRAVELING ON A CITY STREET AT AROUND 30 MILES AN HOUR WITH NO TRAFFIC AROUND.

- NHTSA Complaint, October 2, 2019, ID No. 11265758: THREE DAYS AFTER WE PURCHASED A 2020 TELLURIDE I FOUND A CRACKED IN THE BOTTOM CENTER OF THE WINDSHIELD. I COULDN'T FIND ANY CHIP THAT MIGHT HAVE STARTED THE CRACK, IT JUST APPEARED THE NEXT MORNING . THE CAR WAS PARKED UNDER THE CARPORT SO NOTHING COULD HAVE FALLEN ON THE WINDSHIELD. CONTACTED THE DEALER AND THEY WERE NO HELP AT ALL, INSURANCE HAD TO PAY. SAFELITE AUTO GLASS HAD TO WAIT EIGHT WEEKS FOR KIA TO SHIP A NEW WINDSHIELD. I ASKED THE INSTALLER TO LOOK AT THE CRACK AREA AND SEE IF HE COULD FIND A CAUSE THAT WOULD START THIS CRACK. HE EXPLAINED TO ME THAT ANY ROCK OR FOREIGN OBJECT STRIKE WILL LEAVE AN INDENTATION WITH SOME SPIDER MARKS, HE FOUND NONE? HIS PROGNOSIS WAS, IT WAS STRUCK ON THE BOTTOM EDGE WHEN ASSEMBLED AND CLOSING THE DOOR HARD WOULD FLEX THE WINDSHIELD AND THAT STARTED THE CRACK. IT HAS BEEN ONE MONTH AND I ALREADY HAVE ANOTHER SMALL CHIP. I HAVE REPLACED ONE WINDSHIELD IN FORTY SOMETHING YEARS, DOESN'T VERY LOOK GOOD FOR TELLURIDE OWNERS, SOMETHING IS WRONG?

- NHTSA Complaint, October 10, 2019, ID No. 11267810: ON JULY 4 I NOTICE A CHIP ON RIGHT OF WINDSHIELD WITHOUT NOTICING ANYTHING HITTING THE WINDSHIELD AS I WAS DRIVING. THREE DAYS LATER IT BECAME A CRACK WITHOUT TOUCHING AND IN A WEEK THE CRACK REACH DRIVER SIDE. WINDSHIELD STILL ON BACKORDER. I REPORTED TO KIA CUSTOMER SERVICE AND SOMEBODY ON NHTSA CALL ME AND TOLD ME THAT CRACK CAN HAPPEN THAT IF I PUT A NEW WINDSHIELD AND SAME THING HAPPENS IN LESS THAN 3 MONTH THEN THEY WILL LOOK INTO IT. THIS WINDSHIELDS ARE NOT CHEAP AND I HAVE NEVER HAD A WINDSHIELD BRAKING SO FAST BEFORE IN LESS THAN 3 MONTH OF PURCHASE.

- NHTSA Complaint, October 11, 2019, ID No. 11267853: AFTER JUST 6 WEEKS WEEKS OF OWNING THE CAR WE NOTICED AN 18 INCH CRACK IN WINDSCREEN, STARTING FROM THE TOP AND TRACKING DOWN. NO HISTORY OF ROCK STRIKES OR TRAUMA TO WINDSCREEN.

- NHTSA Complaint, October 11, 2019, ID No. 11267926: WHILE DRIVING ON A FREEWAY AT APPROXIMATELY 45 MPH THE TOP RIGHT SIDE OF THE FRONT WINDSHIELD WAS STRUCK BY A SMALL PEBBLE. THE WINDSHIELD SHOWED A DIME SIZE CRACK WITH SEVERAL SPIDER CRACKS NO LONGER THAN QUARTER OF AN INCH. AFTER PARKING THE VEHICLE ALL NIGHT THE FOLLOWING DAY ONE OF THE SPIDER CRACKS HAD GROWN TO ABOUT 3 INCHES.

- NHTSA Complaint, October 11, 2019, ID No. 11267956: PURCHASED THIS VEHICLE AND HAVE UNDER 2000 MILES, THE VEHICLES WINDSHIELD HAS RECEIVED THREE CHIPS AND SEEMS TO BE WEAK (THIN) GLASS. I'M AFRAID IF STRUCK WHILE DRIVING WITH AN OBJECT OTHER THAN A SMALL PEBBLE IT'LL FAIL AND PLACE MY FAMILIES LIFE IN DANGER. THE WIPER SPRAYER ON THE DRIVERS SIDE WINDOW WHEN DRIVING FAILS TO SPRAY OVER THE DRIVERS VIEW. IT POOLS AT THE LOWER PART OF THE WIPER BLADE AND LOWER LEFT CORNER OF THE WINDOW AT ROAD AND HWY SPEEDS. THIS CAUSES EXCESS AMOUNTS OF FLUID TO BE SPRAYED IN ORDER TO CLEAN THE WINDOW. THE CHIPS ON THE WINDOW ARE SMALL

25

AND TWO ARE IN THE DRIVERS VIEW. I'VE HAD THE SPRAY TIP REPLACED AT THE DEALER BUT IT CONTINUES THE SAME PATTERN.

- <u>NHTSA Complaint, October 11, 2019, ID No. 11267987</u>: SMALL ROCK HIT THE WINDSHIELD FROM A PASSING CAR ON THE HIGHWAY CAUSED A CHIP IN THE WINDSHIELD, WHEN SAFELITE TRIED TO REPAIR IT, IT CRACK. SERVICE TECH SAID THAT IT IS HIGHLY UNUSUAL FOR THIS TO HAPPEN ON A SMALL CHIP LIKE THIS ONE.

- <u>NHTSA Complaint, October 12, 2019, ID No. 11268066</u>: HAD A SMALL ROCK HIT MY WINDSHIELD FROM ROAD GRADING. IT WAS A NORMAL CHIP, NOT UNLIKE ANY THAT I HAVE HAD ON OTHER VEHICLES. I CALLED TO MAKE AN APPOINTMENT THE NEXT DAY TO HAVE IT FILLED TO PREVENT SPREADING. LEAVING WORK THE NEXT DAY, THE WINDSHIELD HAD ACTUALLY CRACKED FROM TOP TO BOTTOM AND TO THE LEFT, IN AN L SHAPE. SO, MY CHIP REPAIR BECAME A FULL WINDSHIELD REPLACEMENT. I HAVE NOW BEEN WAITING 3+ WEEKS FOR A REPLACEMENT AS THEY ARE NOT AVAILABLE. MY AUTO GLASS PLACE HAS HAD ONE ON ORDER FROM OVERSEAS SINCE THAT NEXT DAY. SO, 4-6 WEEKS TO REPLACE A WINDSHIELD THAT TRULY SHOULD NOT HAVE BROKEN AS THE CHIP WAS NO DIFFERENT THAN ANY OTHER CHIP WE GET IN VEHICLES. I ACTUALLY TRIED TO HAVE THE REPLACEMENT DONE BY MY KIA DEALERSHIP. THE SERVICE DEPARTMENT SAID THERE WERE NONE AVAILABLE IN THE US AND GOOD LUCK FINDING ONE, THEY WERE UNABLE TO HELP. WHEN I CALLED TODAY TO INQUIRE ABOUT HAVING THE CAMERAS RE CALIBRATED POST THE REPLACEMENT, I WAS TOLD THAT IF A NON-KIA APPROVED WINDSHIELD IS PUT IN, I WOULD VOID MY WARRANTY. SO, BEYOND WAITING WEEKS ON END TO HAVE A BROKEN WINDSHIELD REPLACED, BEING TOLD 'GOOD LUCK' FINDING ONE AND TOO BAD, THEY CAN'T HELP ME, I AM NOW BEING TOLD I "MAY" HAVE MY WARRANTY VOIDED HAVING IT REPLACED ELSEWHERE, EVEN THOUGH THEY REFUSED TO ASSIST.

- NHTSA Complaint, October 14, 2019, ID No. 11268311: WINDSHIELD WAS DAMAGED BEYOND REPAIR AT ONLY 250 MILES. REPLACEMENT WINDSHIELD TOOK 6 WEEKS. GLASS SEEMS TO BE THIN OR MORE PRONE TO DAMAGE. VEHICLE WAS TRAVELING AT APPROXIMATELY 45 MPH ON A TWO-LANE ROAD AND WAS HIT BY SOME SORT OF DEBRIS FROM A VEHICLE GOING IN THE OPPOSITE DIRECTION. DID NOT SEE THE DEBRIS BEFORE IT STRUCK THE WINDOW.

- NHTSA Complaint, October 15, 2019, ID No. 11268688: DRIVING DOWN THE 35 MPH PART OF HWY 130 YESTERDAY, A LONE CAR PASSED GOING THE OTHER DIRECTION. I HEARD A SMALL "SMACK" OF A SMALL ROCK HITTING MY WINDSHIELD. I LOOKED AT IT 3 MINUTES LATER, AND IT WAS ABOUT THE SIZE OF A DIME. I RESUMED DRIVING AND ARRIVED AT MY DESTINATION. CAME OUT 1 HOUR LATER, AND THE CRACK HAD SPREAD BY 4-5 INCHES. TEMPERATURE WAS 65 DEGREES. THIS WINDSHIELD SEEMS EXTREMELY FRAGILE. NOW I'VE CALLED TO GET A REPLACEMENT - THEY ARE ONLY AVAILABLE THROUGH DEALERS AND COST $750. WILL THE NEW ONES BE MORE DURABLE?

- NHTSA Complaint, October 16, 2019, ID No. 11268807: TINY PEBBLE HIT WINDSHIELD WHEN I WAS DRIVING 35 MPH ON ON RAMP. CRACKED THE WINDSHIELD.

- NHTSA Complaint, October 16, 2019, ID No. 11268829: THE WINDSHIELD CRACKED VERY EASILY FROM A SMALL OBJECT THAT CAME UP FROM THE ROADWAY, WHEN A LARGE TRUCK PASSED US. THE CAR HAD ONLY 1100 MILES AT THE TIME. THE VEHICLE WAS IN MOTION, AND ON THE HIGHWAY.

- NHTSA Complaint, October 16, 2019, ID No. 11268944: MY NEW KIA HAS A COMPLETELY DEMOLISHED/CRACKED WINDSHIELD WITH NO ROCK CHIP, JUST A SPONTANEOUS FAILURE WHILE DRIVING WITH NO TRAFFIC NEARBY

- NHTSA Complaint, October 18, 2019, ID No. 11269493: I HAD JUST PURCHASED MY 2020 KIA TELLURIDE FROM THE DEALERSHIP. WHILE DRIVING HOME I HEARD A LOUD SOUND THAT

27

STARTLED ME AND MADE ME JUMP. I THEN NOTICED THAT MY
WINDSHIELD HAD CRACKED LESS THAN AN HOUR INTO
OWNING THE CAR. I WAS DRIVING 30 MPH WHICH ON A CITY
STREET.

- NHTSA Complaint, October 20, 2019, ID No. 11269770: WINDSHIELD
CRACKS EASILY. 2 WEEKS AFTER PURCHASE IN AUG, WHEN ON
A CLEAN NO CONSTRUCTION AREA ON I 85, HEARD A POP AND
CRACKED WINDSHIELD. NOT HAPPENED IN MORE THAN 25
YEARS ACROSS MORE THAN 3 CARS WE WON AT ONE TIME.

- NHTSA Complaint, October 24, 2019, ID No. 11270663: WHILE
DRIVING ON THE FREEWAY A ROCK HIT THE WINDSHIELD. A
SMALL CHIP TURNED INTO A CRACK ACROSS THE LENGTH OF
THE WINDOW.

- NHTSA Complaint, November 6, 2019, ID No. 11278416: HAD A
PLASTIC WRAP BARELY HIT MY WINDSHIELD ON HIGHWAY
AND IT CRACKED WINDSHIELD.

- NHTSA Complaint, November 18, 2019, ID No. 11280816: THE KIA
TELLURIDE WINDSHIELDS ARE NOT UP TO STANDARDS. THEY
CRACK AND CHIP EXTREMELY EASILY AND CONSTANTLY
OVER THE SMALLEST DEBRIS OR FOR NO REASON AT ALL AND
DRIVING AT 40 MPH. THIS NEEDS TO BE CORRECTED.

- NHTSA Complaint, November 19, 2019, ID No. 11281234:
WINDSHIELD CRACK DRIVING ON HIGHWAY

- NHTSA Complaint, November 25, 2019, ID No. 11282212: WITHIN 6
DAYS OF PURCHASING MY KIA TELLURIDE, IT SUFFERED A
SIGNIFICANT CHIP AND SMALL CRACKING ON THE
WINDSHIELD WHILE DRIVING ON THE FREEWAY AT
APPROXIMATELY 65 MPH. I DID NOT SEE ANY PEBBLES, ROCKS
OR DEBRIS IN THE AREA, NOR DID I OBSERVE ANY PEBBLE
ACTUALLY HIT THE CAR. I DID NOT OBSERVE ANY CARS OR
TRUCKS AHEAD OF ME ON THE FREEWAY WITH ANY
OPEN/UNCOVERED LOADS. IN FACT, I ONLY OBSERVED
PASSENGER VEHICLES. THE TIMING OF THE CHIP/CRACK

28

SEEMED TO COINCIDE GOING OVER A SMALL DIP ON THE HIGHWAY.

- NHTSA Complaint, December 3, 2019, ID No. 11286666: DRIVING ON A PUBLIC ROAD, ROCK HIT WINDSHIELD AT 15 MPH CRACKED WINDSHIELD, CRACK GROWS 1-2 INCHES EVERY HOUR REGARDLESS OF USE

- NHTSA Complaint, December 18, 2019, ID No. 11289814: I WAS DRIVING MY 2020 TELLURIDE ON A TWO LANE ROAD UNDER 45 MPH WITH NO ONCOMING TRAFFIC AND ONE CAR MUCH FURTHER UP THE ROAD. I DID NOT SEE ANYTHING HIT MY WINDSHIELD OR COMING TOWARD ME. I HEARD A VERY LOUD CRACKING NOISE AND MY WINDSHIELD HAD A STARBURST CRACK ON THE DRIVER'S SIDE NEAR THE EDGE OF THE WINDSHIELD. WITHIN 20 MINUTES THE CRACK HAD STARTED TO SPREAD OUT SEVERAL INCHES ON EACH SIDE WITH ONE SIDE CRACKING ALL THE WAY TO THE EDGE. THERE WAS NOT A CHIP ON THE OUTSIDE OF THE GLASS THAT WOULD HAVE BEEN LEFT IF SOMETHING VERY HARD LIKE A ROCK HAD HIT THE WINDSHIELD. THE ONLY THING I CAN THINK OF THAT COULD HAVE HIT THE GLASS WAS AN ACORN FALLING FROM A TREE ABOVE THE ROAD. AN ACORN SHOULD NOT CRACK A WINDSHIELD! THE OUTSIDE TEMPERATURE WAS 38 DEGREES AND I THE WINDSHIELD DEFROSTER HAD BEEN RUNNING FOR ABOUT 10 MINUTES PRIOR TO THE CRACKING.

- NHTSA Complaint, December 19, 2019, ID No. 11290048: WHILE DRIVING ON THE INTERSTATE AT 60MPH A VERY SMALL PEBBLE HIT MY WINDSHIELD ON THE TOP RHS AND PUT A DIME SIZED HOLE IN THE WINDSHIELD COMING TO A POINT ON THE INSIDE MAKING A COMPLETE OPENING. IT IS NOW STARTING TO CRACK LIKE A SPIDERWEB. SAFELITE HAS REFUSED TO TOUCH IT AND THE DEALERSHIP HAS STATED IT WILL TAKE SEVERAL WEEKS TO GET A REPLACEMENT AND THE COST IS UPWARDS OF $750.00+. THIS IS ABSOLUTELY RIDICULOUS, WHEN YOU PAY THIS MUCH FOR A VEHICLE AND YOU HAVE TO RETURN TO THE DEALERSHIP TO OBTAIN A CHEAPLY MADE PRODUCT AND PAY A NOT SO CHEAP PRICE FOR IT. THIS IS ABSOLUTELY HIGHWAY ROBBERY. THE

29

SERVICE DEPARTMENT RECOMMENDED I TURN THIS OVER TO MY CAR INSURANCE. AFTER SPEAKING WITH MY INSURANCE PROVIDER, I LEARNED MY PREMIUM WILL INCREASE DUE TO HAVING TO FILE A CLAIM. SO, BASICALLY I'M GOING TO HAVE TO PAY AN ENORMOUS AMOUNT OF MONEY FOR A CHEAPLY MADE PRODUCT OR PAY AN ENORMOUS AMOUNT OF MONEY OVER WHO KNOWS HOW LONG FOR A CHEAPLY MADE PRODUCT. FROM LOOKING AT THE GROWING AMOUNT OF COMPLAINTS, THERE APPEARS TO BE A LEGITIMATE CAUSE FOR INVESTIGATION INTO THE PRODUCT KIA IS PUTTING INTO THEIR VEHICLES AND SELLING TO CONSUMERS. ADDITIONALLY, SHOULD SOMETHING SMALL COME THROUGH ONE OF THESE WINDSHIELDS AND INJURE A PERSON INSIDE OF THE VEHICLE OR CAUSE AN ACCIDENT, I WOULD PRESUME THE AFFECTED INDIVIDUAL(S) WOULD HAVE A LEGITIMATE GROUND FOR A POTENTIAL LAWSUIT. THERE ARE FAR TOO MANY COMPLAINTS BEING FILED AGAINST KIA FOR THIS SAME ISSUE AND FAILURE TO INVESTIGATE THIS MANY COMPLAINTS BY CONSUMERS IS RECKLESS.

- NHTSA Complaint, January 3, 2020, ID No. 11296878: A SMALL ROCK HIT MY WINDSHIELD WHILE DRIVING AT 50 MPH ON THE FREEWAY. THE WINDSHIELD EASILY CRACKED AND CHIPPED. IT HAD TO BE COMPLETELY REPLACED FOR $1200. I HAVE OWNED OTHER CARS BEFORE AND NEVER ENCOUNTERED SUCH A FRAGILE WINDSHIELD.

- NHTSA Complaint, January 3, 2020, ID No. 11296918: WINDSHIELD CRACKED WITHOUT ANY SIGN OF ANYTHING HITTING IT. MY WIFE WENT INTO THE STORE AND WHEN SHE RETURNED THERE WAS A CRACK IN THE WINDSHIELD STARTING ON THE DRIVER SIDE LOWER LEFT. NO RECOLLECTION OF ANYTHING HITTING THE WINDSHIELD.

- NHTSA Complaint, January 9, 2020, ID No. 11298167: WHEN WE PURCHASED THE VEHICLE A SMALL PEBBLE HIT WINDSHIELD AND HAD IT REPAIRED IN 2 DAYS. THE NEXT ONE HAPPENED IN JANUARY, WENT TO GET IN VEHICLE AND HAD A CRACK RUNNING ACROSS WINDSHIELD FROM TOP OF GLASS BY REAR VIEW MIRROR TO UNDERNEATH REAR VIEW ON DRIVERS SIDE.

30

IT IS STILL GOING ACROSS WINDSHIELD. COST TO REPAIR IS AROUND $900.00 PLUS HAVE TO TAKE BACK TO KIA DEALER AND GET VEHICLE CALIBRATED

- NHTSA Complaint, January 29, 2020, ID No. 11302883: WHILE DRIVING ON THE HIGHWAY I HEARD THE SOUND OF SMALL PEBBLE HITTING THE WINDSHIELD. (I DID NOT SEE ANYTHING) THE CLOSEST CAR WAS TWO LANES AWAY AND MORE TO THE SIDE THAN IN FRONT. I DISCOVERED A DIME SIZE, STAR SHAPED, CHIP IN THE WINDSHIELD. WITHIN A FEW MINUTES TWO CRACKS WERE BRANCHING OUT FROM THE CHIP ABOUT 1/2" IN LENGTH. I TOOK THE CAR IN THE NEXT DAY TO HAVE THE CHIP REPAIRED SO IT DID NOT SPREAD OUT FURTHER.

I HAVE DRIVEN MANY MAKES AND MODELS OF VEHICLES IN 35 YEARS AND I HAVE NEVER EXPERIENCED THIS TYPE OF DAMAGE EVEN WHEN HIT BY SOMETHING THAT WAS VISIBLY LARGER. THIS IS WHY I FELT I NEEDED TO VOICE MY COMPLAINT.

I JUST PURCHASED THIS VEHICLE LESS THAN TWO MONTHS AGO AND THIS IS MAKING ME CONCERNED WHETHER IT IS SAFE TO DRIVE WITH A WINDSHIELD THIS FRAGILE. I FEEL THIS                WILL                HAPPEN                AGAIN.

BEFORE THIS INCIDENT, I LOVED MY VEHICLE BUT NOW I WONDER IF I SHOULD KEEP IT. WHAT OTHER MATERIALS ARE INFERIOR? IS IT SAFE? WHAT WILL HAPPEN IF I GET STUCK IN A MINOR                HAIL                STORM?

IN MY OPINION, THERE IS NO WAY THIS WINDSHIELD COULD PASS ANY SAFETY TEST FOR STRENGTH OR IMPACT RESISTANCE.

I JUST HOPE THAT MY COMPLAINT ALONG WITH THE OTHERS WILL SOON BE ENOUGH TO TRIGGER AN INVESTIGATION AND WE CAN GET A PROPER WINDSHIELD.

- NHTSA Complaint, February 12, 2020, ID No. 11308662: WINDSHIELD DEVELOPED A RANDOM CRACK ON THE PASSENGER SIDE. THIS

CLASS ACTION COMPLAINT

SEEMS TO BE A KNOWN SAFETY ISSUE WITH THIS VEHICLE. VEHICLE WAS HIT BY A SMALL ROCK CHIP WHILE DRIVING ON HIGHWAY.

- NHTSA Complaint, February 10, 2020, ID No. 11309004: WE HEARD A LOUD NOISE, LIKE GLASS BREAKING AS WE WERE DRIVING. THE NEXT DAY WE WENT TO OUR TELLURIDE AND FOUND THE WINDSHIELD CRACKED ALMOST HALFWAY ACROSS. THE CRACK STARTED IN THE UPPER CORNER, PASSENGER SIDE, AND TRAVELED DOWNWARD TOWARD THE CENTER. WE BOUGHT THE CAR NEW IN DECEMBER. THE CAR WAS STATIONARY WHEN THE CRACK TRAVELED BUT WE HEARD THE NOISE WHILE DRIVING.

- NHTSA Complaint, February 21, 2020, ID No. 11310546: MY WINDSHIELD HAS TWO CRACKS IN THAT IMPAIRS VISIBILITY. IT WAS NOT HIT BY DEBRIS FROM THE ROAD. THE BOTH START FROM THE EDGE OF THE GLASS AND SPREAD ACROSS THE WINDSHIELD. I CONTACTED THE LOCAL DEALERSHIP AND CAN HAVE IT REPLACED FOR 800.00!!!!!! I THINK THIS SHOULD BE A RECALL DUE TO IT BEING A WIDESPREAD ISSUE.

- NHTSA Complaint, February 24, 2020, ID No. 11311188: LESS THAN TWO WEEKS AFTER I PURCHASED MY NEW KIA TELLURIDE, THE WINDSHIELD SUSTAINED A HIT FROM A SMALL ROCK WHILE I WAS DRIVING AT 70 MPH ON A LOCAL HIGHWAY ON MY WAY TO WORK. THE ROCK HIT SOUND WAS LOUDER THAN WHEN THIS HAPPENED IN OTHER CARS I HAVE DRIVEN. IT WAS VERY LOUD. I COULD SEE THE HIT RIGHT AFTER ON MY WINDSHIELD AND COULDN'T BELIEVE IT. THE DIAMETER AND DEPTH OF THE HIT WERE SERIOUS. I TOOK THE CAR IMMEDIATELY TO A GLASS REPAIR VENDOR PER GEICO. I WAS TOLD BY THE SERVICE MANAGER THAT THE WINDSHIELD DAMAGE WAS A COMPOUND FRACTURE AND THAT I WOULD NEED AN ENTIRE NEW WINDSHIELD. THEN THE TECHNICIAN ASSIGNED TO WORK WITH ME TOLD ME TO GO WITH A PATCH FOR NOW BECAUSE HE COULD REPLACE THE WINDSHIELD AND THEN THIS MIGHT HAPPEN ALL OVER AGAIN IN A FEW MORE DAYS. SO I HAVE BEEN DRIVING AROUND WITH A PATCH SINCE IT WAS FIXED SWEATING EVERY DAY THAT THE WINDSHIELD

32

IS NOT GOING TO HOLD UP. NOT ONLY THIS, I HAVE QUESTIONED WHETHER OR NOT I CAN EVEN RUN THIS CAR THROUGH A CARWASH. I AM AFRAID OF ANY PRESSURE BEING PUT ON THE DAMAGED SPOT WILL MAKE THE HAIRLINE CRACKS GET LARGER BECAUSE THE PATCHED AREA ITSELF IS SHOWING SMALL HAIRLINE CRACKS COMING OUT FROM THE SIDES AND APPEARS TO BE GETTING WORSE. I AM CONCERNED FOR MY PERSONAL SAFETY AND THOSE OF MY PASSENGERS IF THE WINDSHIELD DOES NOT GET FIXED. ALL OF THIS SAID, I AM ENCOURAGED THAT KIA IS GOING TO TAKE CARE OF IT BECAUSE THEY SENT ME A LETTER AND TOLD ME TO TAKE THE CAR TO MY DEALERSHIP AND THAT THE WINDSHIELD WOULD BE REPLACED. I HAVE ONLY STARTED THIS PROCESS AND HOPE IT GOES WELL. I AM SAD TO BUY THE FIRST NEW CAR I HAVE OWNED IN A LONG TIME AND HAVE THIS HAPPEN EVEN BEFORE I HAVE MADE THE FIRST CAR PAYMENT. AGAIN, I AM ENCOURAGED THAT KIA IS STANDING BEHIND ITS BRAND AND PROACTIVELY OFFERING TO HELP TELLURIDE CUSTOMERS WITH THIS ISSUE. IT IS VERY UNFORTUNATE TO HAVE TO DEAL WITH THIS.

- NHTSA Complaint, March 1, 2020, ID No. 11315361: WINDSHIELD RANDOMLY CRACKED WHILE PARKED.

- NHTSA Complaint, March 3, 2020, ID No. 11315815: I'VE HAD MY 2020 KIA TELLURIDE LESS THAN TWO WEEKS, GOT INTO THE CAR WHICH WAS PARKED IN THE GARAGE AND THE WINDSHIELD WAS CRACKED. NEVER HEARD A ROCK HITTING THE WINDSHIELD AT ANY TIME (I'M THE ONLY DRIVER), THE CRACK STARTED IN TOP CORNER ON PASSENGER SIDE AND TRAVELED ACROSS THE TOP HALF OF THE WINDSHIELD IN ABOUT 3 HOURS. HAD A 2014 SORENTO WITH 12 TO 14 ROCK CHIPS THAT NEVER SPREAD LIKE THIS.

- NHTSA Complaint, March 9, 2020, ID No. 11317000: THE WINDSHIELD HAS APPEARED TO CRACK FOR NO REASON. WE DID RECEIVE A LETTER FROM KIA SAYING THEY WOULD REPLACE IT BUT THEY NEED TO ACTUALLY RECALL THESE WINDSHIELDS IF THEY ARE HAVING SUCH AND ISSUE WITH THEM. I'VE ONLY HAD IT FOR 4 MONTHS. NOT SURE HOW LONG

33

IT HAS BEEN LIKE THIS BUT WE JUST NOTICED IT THIS
WEEKEND.

- NHTSA Complaint, March 16, 2020, ID No. 11318211: VEHICLE IN
MOTION ON HIGHWAY - SMALL PEBBLE HIT WINDSHIELD
WHICH CHIPPED THEN CRACKED VERY QUICKLY IN A SHORT
PERIOD OF TIME PREVENTING REPAIR OF THE CHIP AND
REQUIRING WINDSHIELD REPLACEMENT.

- NHTSA Complaint, March 23, 2020, ID No. 11319062: THE
WINDSHIELD HAS CRACKED ON BOTH SIDES AND HAS
EXTENDED BEYOND REPAIR. THIS APPEARED TO HAPPEN
DURING NORMAL DRIVING CONDITIONS. THE DEALER WANTS
TO CHARGE US ABOUT $800 TO REPAIR. THIS SEEMS LIKE A
ONGOING PROBLEM WITH OTHERS AND WE WANT THIS
REPORTED AS WELL.

- NHTSA Complaint, April 26, 2020, ID No. 11322253: THE
WINDSHIELD HAS CRACKED BEYOND REOAIR WITHIN A FEW
HOURS. IT STARTED WITH A SMALL CHIP ON DRIVERS SIDE
ANDNWE WERE PLANNINGNTO GET IT FIXED NEXT DAY. A FEW
HIURS LATER WE WENT TO THE GARAGE AND ITNWAS A HUGE
CRACK SPREAD ACROSS THE WINDSHIELD. THIS SEEMS LIKE A
ONGOING PROBLEM WITH OTHERS AND WE WANT THIS
REPORTED AS WELL. WE WERE DRIVING ABOUT 35 MPH ON
NORMAL ROAD CONDITIONS. SEEMS LIKE SOMETHING SMALL
HIT WINDSHIELD THE CRACK WAS ABOUT A NICKEL SIZE AND
THEN BOOOM!

- NHTSA Complaint, March 29, 2020, ID No. 11326531: WE PURCHASED
THE NEW TELLURIDE IN DECEMBER, 2019. THE WINDSHIELD
CRACKED AND THE CRACK RAN ACROSS HALF OF THE
WINDSHIELD. KIA DID REPLACE THE WINDSHIELD WITHOUT A
CHARGE. THIS WAS ONE IN FEBRUARY 2020. OUR NEW
WINDSHIELD NOW AND A BIG CHIP IN IT, ABOUT THE SIZE OF A
PENCIL ERASER. THERE IS LESS THAN 7000 MILES ON IT. THERE
MUST BE A DEFECT OR QUALITY ISSUE IN THE WINDSHIELD
GLASS THEY ARE USING. WE ARE IN OUR LATE 60'S. NO OFF
READING OR RISKY DRIVING. WE WERE DRIVING ON THE
INTERSTATE WHEN THE NEW CHIP HAPPENED.

34

- <u>NHTSA Complaint, May 29, 2020, ID No. 11326554</u>: THE WINDSHIELD IS VERY FRAGILE AND CHIPS VERY EASILY, A VERY MILD HIT BY GRAVEL OR PEBBLE CAUSES DAMAGE TO THE FRONT WINDSHIELD.

- <u>NHTSA Complaint, May 30, 2020, ID No. 11326584</u>: MY 2020 KIA TELLURIDE WINDSHIELD IS CRACKED. IT'S ON THE PASSENGER SIDE OF THE WINDSHELD. IT'S A LONG CRACK THAT START AT THE A-PILLER AND TRAVELS ACROSS THE WINDSHIELD. WHEN I GOT IN MY CAR TO GO SOMEWHERE I SAW THE CRACK. I NEVER SAW OR HEARD ANYTHING HIT THE WINDSHIELD THIS TIME. ALSO MY WIFE AND MY SUN NEVER SAW OR HEARD ANYTHING HIT THE WINDSHIELD THIS TIME.

- <u>NHTSA Complaint, June 15, 2020, ID No. 11329079</u>: WHILE DRIVING DOWN THE EXPRESSWAY IN LATE FEBRUARY, A SMALL ROCK HIT THE DRIVERS SIDE LOWER WINDSHIELD. IMMEDIATELY, I SAW A BULLS-EYE APPEAR FOLLOWED BY A LINE CRACK. AFTER DRIVING A MILE OR SO I SAW THE CRACK QUICKLY EXPAND. OVER THE COURSE OF A FEW DAYS IT GOT WORSE. I FILLED A CLAIM AND GOT IT REPLACED WITH AN OEM WINDSHIELD. ABOUT 2 WEEKS AGO, I TOOK THE CAR TO THE CAR WASH AND NOW THE WINDSHIELD HAS FINE SCRATCHES ALL OVER IT BUT NOT THE REST OF THE CAR. SOMETHING IS DEFINITELY AMISS HERE.

- <u>NHTSA Complaint, June 19, 2020, ID No. 11329723</u>: I WAS DRIVING ON THE HIGHWAY AND HEARD A FAIRLY QUITE NOISE, LOOKED UP AND THERE WAS A QUARTER SIZE, BULLSEYE CRACK IN THE WINDSHIELD WHICH QUICKLY GREW TO A 3 FEET AND GROWING CRACK.

- <u>NHTSA Complaint, June 23, 2020, ID No. 11330351</u>: WINDSHIELD CRACKED FROM CHIP THAT I HEARD HAPPEN ON THE HIGHWAY 3/6/2020. THIS WINDOW IS AN OEM REPLACEMENT WINDOW FROM KIA. THE FIRST WINDSHIELD HAD THE EXACT SAME THING HAPPEN IN JULY 2019 WITHIN THE FIRST MONTH OF PURCHASING THE CAR.

- NHTSA Complaint, June 26, 2020, ID No. 11331093: VEHICLES WINDSHIELD HAS MULTIPLE CHIPS AND CRACKS. WINDSHIELD WAS HIT WITH SMALL ROCK LEAVING LARGE BUBBLE AND CRACKS IN THE GLASS. A WEEK LATER A SMALL ROCK HIT MY WINDSHIELD LEAKING A SMALL CHIP. A MONTH AFTER THAT IT HAPPENED AGAIN WITH EVEN A SMALLER ROCK. ALL DAMAGE OCCURRED WHILE DRIVING THE VEHICLE IN TOWN GOING UNDER 50 MPH.

- NHTSA Complaint, June 30, 2020, ID No. 11331695: I HAVE HAD MY KIA TELLURIDE EX 2020 FOR THE PAST 4 MONTHS. ON MONTH 3 ITS WINDSHIELD CRACKED WHILE DRIVING ON RIGHT LOWER SIDE AND CRACKS STARTED TO QUICKLY EXPAND NEEDING TO REPLACE THE WINDSHIELD THROUGH INSURANCE AND PAID 500$ DEDUCTIBLE. I NEVER ANYTHING HITTING THE WINDSHIELD AT THAT TIME. AGAIN JUST A FEW DAYS AGO IN MONTH 4 OF OWNERSHIP WINDSHIELD GLASS HAS CHIPPED FROM TWO PLACES. I NEVER SAW OR HEARD ANYTHING HITTING THE GLASS WHILE DRIVING AND I AM THE ONLY DRIVER.

- NHTSA Complaint, July 3, 2020, ID No. 11337849: I PURCHASED MY KIA TELLURIDE SX IN JUNE 2019. I HAVE APPROXIMATELY 12K MILES ON THE VEHICLE. A FEW DAYS AGO, WHILE DRIVING ON THE HIGHWAY WITH THE FLOW OF TRAFFIC, I CHANGED LANES WITH A SMALL CAR (HONDA CIVIC OR EQUIVALENT) ABOUT 5 OR MORE CAR LENGTHS AHEAD OF ME. AS I COMPLETED MY LANE CHANGE, A PEBBLE HIT THE WINDSHIELD NEAR THE PASSENGER A-FRAME, ABOUT 3/4 OF THE WAY UP. THE PEBBLE MUST HAVE BEEN SMALL AS WE WERE ON THE MAIN LANES OF THE HIGHWAY, AND THERE WERE NO COMMERCIAL VEHICLES AROUND. THE PEBBLE MADE A SMALL IMPACT POINT, AND A NEAR-IMMEDIATE 6-8 INCH CRACK. THE OUTSIDE TEMPERATURE WAS APPROXIMATELY 95F TO 100F. OVER THE NEXT 2 HOURS, THE CRACK GREW QUICKLY TO AROUND 30 INCHES ACROSS THE MIDDLE OF THE WINDSHIELD, TOWARDS THE DRIVER SIDE. IT HAS CONTINUED TO GROW A FEW INCHES A DAY, DEPENDING ON HOW MUCH THE CAR IS BEING DRIVEN AND I SUSPECT THAT HOT OUTDOOR AIR TEMPERATURES INCREASE GROWTH. I NOTIFIED MY LOCAL KIA DEALER

CLASS ACTION COMPLAINT

ABOUT THE ISSUE AND ALSO INFORMED THEM OF THE CORPORATE GUIDANCE SENT OUT FROM KIA IN NOVEMBER 2019 ABOUT THIS ISSUE TO PROVIDE GOODWILL REPLACEMENTS TO TELLURIDE OWNERS. THEY WERE AWARE OF THE GUIDANCE AND AGREED TO REPLACE THE WINDSHIELD AT NO CHARGE TO ME.

- NHTSA Complaint, July 8, 2020, ID No. 11338185: WINDSHIELD CRACKED IN THE BOTTOM PASSENGER SIDE CORNER AFTER OWNING THE CAR FOR ABOUT 4 MONTHS AND SPREAD OVER 12 INCHES BY THE NEXT DAY WITHOUT HAVING ANY REALLOCATION THAT SOMETHING EVEN HIT IT. THE CRACK DOESN'T LOOK TO HAVE A "ROCK CHIP" TYPE OF MARKING.

- NHTSA Complaint, July 16, 2020, ID No. 11339662: MY WINDSHIELD CRACKED WHILE I WAS DRIVING 20 MPH GOING TO THE GROCERY STORE THAT IS LOCATED 2 BLOCKS AWAY FROM MY HOUSE, IT STARTED WITH A SMALL CRACK AND BY THE TIME I WAS DONE WITH THE SHOPPING THE CRACK SPREAD TO 2'

ATTACHED PLEASE FIND PICTURES SHOWING HOW THE WINDSHIELD LOOKS

- NHTSA Complaint, July 30, 2020, ID No. 11342343: MY TINY CHIP FROM PEBBLE IN BOTTOM CORNER IS NOW CRACKING TOTALLY ACROSS THE WINDSHIELD IN 1 DAY

- NHTSA Complaint, July 31, 2020, ID No. 11342593: DRIVING ON HIGHWAY, SEMI DRIVES BY AND A ROCK HIT MY WINDSHIELD, RIGHT IN THE MIDDLE, IT DID SOME PRETTY GOOD DAMAGE, I DROVE STRAIGHT TO MY INSURANCE COMPANY BY THE TIME I HAD ARRIVED THERE IT WAS SPLINTERING EVERYWHERE, MY AGENT CAME OUT TO LOOK AT IT AND HE COULD NOT BELIEVE THE DAMAGE TO THE WINDSHIELD FROM THE ROCK., MY HUSBAND AND I HAVE ONLY HAD THE CARE FOR 3 MONTHS. I HAVE BEEN RESEARCHING FOR A NEW WINDSHIELD AND CAME ACROSS THIS WEBSITE SO I THOUGHT I WOULD REACH OUT TO YOU ALL SINCE I AM STILL TRYING TO FIND A REPLACEMENT WINDSHIELD.

37

- NHTSA Complaint, August 11, 2020, ID No. 11348702: 10/25/2019 THE FRONT WINDSHIELD WAS HIT BY SOMETHING WHILE TRAVELING ON THE HIGHWAY. I INSPECTED THE WINDSHIELD AND DID NOT FIND ANY EVIDENCE OF DAMAGE. THE NEXT MORNING THERE WAS A LONG CRACK IN MY WINDSHIELD. I CONTACTED KIA AND WAS INFORMED THAT THIS WAS NOT A WARRANTY ISSUE AND WOULD NOT BE COVERED. THE WINDSHIELD WAS REPLACED WITH A KIA REPLACEMENT WINDSHIELD BY SAFELITE. THE COST OF REPAIR WAS $1,540.43. A CLAIM WAS MADE AND PAID BY MY INSURANCE CARRIER AIG. A FEW MONTHS LATER I RECEIVED A LETTER FROM KIA ACKNOWLEDGING THAT THERE WAS AN ISSUE AND THE COST OF THE REPAIR WOULD BE PAID FOR BY KIA. I CONTACTED AIG AND LET THEM KNOW, BUT TO MY KNOWLEDGE, AIG HAS NOT MADE A REQUEST FOR REIMBURSEMENT.

  8-10-2020

  MY REPLACEMENT WINDSHIELD WAS HIT BY A SMALL OBJECT WHILE TRAVELING AT HIGHWAY SPEED. THE WINDOW IMMEDIATELY DEVELOPED A CRACK THAT CONTINUED TO EXPAND AS I DROVE. THE BREAK HAPPENED YESTERDAY. I TOOK THE VEHICLE INTO A KIA DEALERSHIP AND HAVE FILED A CLAIM. I AM WAITING FOR A DECISION AND A REPLACEMENT WINDSHIELD. IN THE MEANTIME THE CRACK IS CONTINUING TO GROW AND IS NOW 24? LONG AND GROWING. IT IS MY UNDERSTANDING THAT KIA IS GOING TO PAY TO REPLACE THE WINDSHIELD, BUT MY SERVICE ADVISOR TOLD ME THAT KIA WOULD NOT PAY FOR ANY ADDITIONAL REPLACEMENTS. NOTE BOTH INCIDENTS HAPPEN ON THE WAY HOME FROM MY WEEKEND HOUSE ON US-59 NORTH.

- NHTSA Complaint, August 15, 2020, ID No. 11349564: WINDSHIELD HAS MANY CHIPS. IT SEEMS THAT MORE THAN OTHER VEHICLES I HAVE OWNED. TELLURIDE ONLY HAS ABOUT 13,000 MILES AND I GET SPARKLES ON THE WINDSHIELD WHEN DRIVING IN THE SUM FROM ALL OF THE SMALL CHIPS. CAR ONLY DRIVEN ON THE HIGHWAY ON SELDOM TRIPS FROM LOS ALAMOS TO ALBUQUERQUE. I NOW SEE WHY THEY DO NOT

38

COVER THE WINDSHIELD ON WARRANTY OR EXTENDED WARRANTY WHICH I PURCHASED

57.    In addition to the above NHTSA complaints, consumers were discussing the Windshield Defect online on Telluride-enthusiast websites as early as May 22, 2019.[6] Upon information and belief, Kia regularly monitored these websites.

58.    Although Kia was aware of the widespread nature of the Windshield Defect in the Class Vehicles, and that it posed grave safety risks, Kia has failed to take adequate steps to notify all Class Vehicle owners of the Defect and provide relief.

59.    Customers have reported the Windshield Defect in the Class Vehicles to Kia directly and through its dealers.  Defendant is fully aware of the Windshield Defect contained in the Class Vehicles.  Nevertheless, Defendant actively concealed the existence and nature of the Defect from Plaintiff and the other Class Members at the time of purchase or repair and thereafter.  Specifically, Defendant:

> a. failed to disclose, at the time of purchase or repair and thereafter, any and all known material defects or material nonconformities of the Class Vehicles, including the Windshield Defect;

---

[6]    *See*    https://www.kiatelluride.org/threads/is-there-really-a-problem-with-the-windshields-on-the-telluride.662/ (discussions and complaints about Windshield Defect was topic of conversation as of May 22, 2019) (last visited July 30, 2020); https://tellurideforum.org/threads/the-ultimate-telluride-windshield-chip-cracking-discussion.2341/ (discussions and complaints about Windshield Defect was topic of conversation as of June 9, 2019 with over 240 separate posts) (last visited July 30, 2020); https://www.kiatelluride.org/threads/windshield-chips-and-cracks.904/ (issues and complaints about Windshield Defect was topic of conversation as of July 10, 2019) (last visited July 30, 2020); https://www.kiatelluride.org/threads/windshield-on-back-order-not-happy.994/ (issues and complaints about Windshield Defect was topic of conversation as of August 19, 2019) (last visited July 30, 2020).

b. failed to disclose, at the time of purchase or repair and thereafter, that the Class Vehicles and their front windshield were not in good working order, were defective, and were not fit for their intended purpose; and,

c. failed to disclose and/or actively concealed the fact that the Class Vehicles and their front windshield were defective, despite the fact that Defendants learned of the Windshield Defect as early as 2019, if not before.

60.     Defendant has deprived Class Members of the benefit of their bargain, exposed them all to a dangerous safety Defect, and caused them to expend money at its dealerships or other third-party repair facilities and/or take other remedial measures related to the Windshield Defect contained in the Class Vehicles.

61.     Defendant has not recalled the Class Vehicles to repair the Windshield Defect, has not offered to its customers a suitable repair or replacement of parts related to the Windshield Defect free of charge, and has not reimbursed all Class Vehicle owners and leaseholders who incurred costs for repairs related to the Windshield Defect.

62.     Class Members have not received the value for which they bargained when they purchased or leased the Class Vehicles.

63.     As a result of the Windshield Defect, the value of the Class Vehicles has diminished, including without limitation, the resale value of the Class Vehicles. Reasonable consumers, like Plaintiff, expect and assume that a vehicle's front

40

windshield is not defective and will not crack, chip and/or fracture for no reason at all or under circumstances that would not cause non-defective windshields to similarly fail. Plaintiff and Class Members further expect and assume that Kia will not sell or lease vehicles with known safety defects, such as the Windshield Defect, and will fully disclose any such defect to consumers prior to purchase or offer a suitable non-defective repair. They do not expect that Kia would fail to disclose the Windshield Defect to them, and then purport to remedy the defect with a limited warranty extension program extended to a subset of Class Members that, at best, results in the replacement of one defective component with another.

## CLASS ACTION ALLEGATIONS

**A. The Class**

64.     Plaintiff brings this case as a nationwide class action on behalf of the following class pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3):

> **Nationwide Class:** All persons who purchased or leased any 2020-2021 Kia Telluride vehicle (the "Class").

65.     In the alternative, Plaintiff seeks to represent the following Texas state subclass pursuant to Fed. R. Civ. P. 23(c)(5), in the event that the Court declines to certify the Nationwide Class:

> **Texas Class:** All persons who purchased or leased any 2020-2021 Kia Telluride vehicle in the State of Texas (the "Texas Class").

66.     Defendant and its employees or agents are excluded from the Class.

B. **Numerosity**

67.    Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process, Plaintiff believes, and on that basis alleges, that thousands of Class Vehicles have been sold and leased in Texas.

C. **Common Questions of Law and Fact**

68.    There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members.  These questions include:

a.    whether the Class Vehicles suffer from the Windshield Defect;

b.    whether the Windshield Defect constitutes an unreasonable safety hazard;

c.    whether Defendant knows about the Windshield Defect and, if so, how long Defendant has known of the Defect;

d.    whether the defective nature of the Class Vehicles' front windshield constitutes a material defect;

e.    whether Defendant had and has a duty to disclose the defective nature of the Class Vehicles' front windshield to Plaintiff and the other Class Members;

42

f.      whether Plaintiff and the other Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

g.      whether Defendant knew or reasonably should have known of the Windshield Defect contained in the Class Vehicles before it sold or leased them to Class Members; and

h.      Whether Defendant breached its express warranty and the implied warranty of merchantability and whether Defendant violated the Texas Deceptive Practices Act and the Magnuson-Moss Warranty Act as alleged in this Complaint.

## D. <u>Typicality</u>

69.     The Plaintiff's claims are typical of the claims of the Class since Plaintiff purchased a defective Class Vehicle, as did each member of the Class.  Furthermore, Plaintiff and all members of the Class sustained economic injuries arising out of Defendant's wrongful conduct.  Plaintiff is advancing the same claim and legal theory on behalf of herself and all absent Class members.

## E. <u>Protecting the Interests of the Class Members</u>

70.     Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in handling class actions and claims involving unlawful business practices.  Neither Plaintiff nor her counsel has any interest which might cause them not to vigorously pursue this action.

43

## F. Proceeding Via Class Action is Superior and Advisable

71.     A class action is the superior method for the fair and efficient adjudication of this controversy.  The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.  It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court.  Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Defendant's vehicle identification numbers, warranty claims, registration records, and database of complaints.

72.     Defendant has acted, and refused to act, on grounds generally applicable to the Classes, thereby making appropriate final equitable relief with respect to the Classes as a whole.

# FIRST CAUSE OF ACTION

### Violation of the Texas Deceptive Practices Act
### Tex. Bus. & Com. Code § 17.41, *et seq.*

73.    The Plaintiff incorporates by reference all allegations contained in this Complaint as though fully stated herein.

74.    The Sanchez Vehicle and the Class Vehicles are "goods" under Tex. Bus. & Com. Code § 17.45(1) because they are tangible chattel that were purchased or leased for use.

75.    Defendant is a "person" under Tex. Bus. & Com. Code § 17.45(3) because it is a corporation.

76.    Plaintiff and the Class Members are "consumers" under Tex. Bus. & Com. Code § 17.45(4) because they sought or acquired their vehicle by purchase.

77.    At all relevant times, Defendant has engaged in "trade" and "commerce" under Tex. Bus. & Com. Code § 17.45(6) by advertising, offering for sale, selling, leasing, and/or distributing vehicles in the United States, including Texas, directly or indirectly affecting Texas citizens through that trade and commerce.

78.    The allegations set forth herein constitute false, misleading, or deceptive trade acts or practices in violation of Texas's Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code § 17.41, *et seq.*

79.    By failing to disclose and concealing the defective nature of the Class Vehicles' front windshield from Plaintiff and prospective Class Members, Defendant

45

violated the Texas Deceptive Practices Act as it represented that the Class Vehicles had characteristics and benefits that they do not have, represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another, and advertised the Class Vehicles with the intent not to sell them as advertised.

80.    Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

81.    Defendant knew that the Class Vehicles' front windshields suffered from an inherent defect, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

82.    Defendant was under a duty to Plaintiff and the Class Members to disclose the defective nature of the Class Vehicles' front windshields and/or the associated repair costs because:

a.    Defendant was in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles' front windshields;

b.    Plaintiff and the Class Members could not reasonably have been expected to learn or discover that their front windshields have a dangerous safety defect until after they purchased the Class Vehicles; and,

c.    Defendant knew that Plaintiff and the Class Members could not reasonably have been expected to learn about or discover the Windshield Defect.

46

83.     The facts concealed or not disclosed by Defendant to Plaintiff are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the subject vehicle

84.     Plaintiff and the Class relied on Defendant to disclose material information it knew, such as the defective nature of the windshields in the Class Vehicles, and not to induce them into a transaction they would not have entered had the Defendant disclosed this information.

85.     By failing to disclose the Windshield Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

86.     Moreover, Defendant's intentional concealment of and failure to disclose the Windshield Defect constitutes an "unconscionable action or course of action" under Tex. Bus. & Com. Code § 17.45(5) because, to the detriment of Plaintiff and the Class, that conduct took advantage of their lack of knowledge, ability, and experience to a grossly unfair degree. That "unconscionable action or course of action" was a producing cause of the economic damages sustained by Plaintiff and the Class.

87.     The facts concealed or not disclosed by Defendant to Plaintiff and the other Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them.

88.     Had Plaintiff and other Class Members known that the Class Vehicles' front windshields were defective, they would not have purchased the Class Vehicles

47

or would have paid less for them.

89.     Plaintiff and the other Class Members are reasonable consumers who do not expect that their vehicles will suffer from a Windshield Defect.  That is the reasonable and objective consumer expectation for vehicles and their front windshields.

90.     As a result of Defendant's misconduct, Plaintiff and the other Class Members have been harmed and have suffered actual and economic damages in that the Class Vehicles and their front windshields are defective and require repairs or replacement, and are worth less money because of the Defect.

91.     In addition, Defendant is also liable under Tex. Bus. & Com. Code § 17.50(a) because Defendant's breach of the implied warranty of merchantability set forth below was a producing cause of economic damages sustained by Plaintiff and the Class.

92.     Plaintiff has provided adequate notice to Defendant.

93.     Plaintiff and the Class should be awarded three times the amount of their economic damages because Defendant intentionally concealed and failed to disclose the defective nature of the Class Vehicles

## SECOND CAUSE OF ACTION
### Breach of the Implied Warranty of Merchantability Pursuant to the Tex. Bus. & Com. Code § 2.314

94.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

48

95.     Defendant is a merchant with respect to motor vehicles.

96.     The Class Vehicles were subject to implied warranties of merchantability running from the Defendant to Plaintiff and Class members.

97.     An implied warranty that the Class Vehicles were merchantable arose by operation of law as part of the sale or lease of the Class Vehicles.

98.     Defendant breached the implied warranty of merchantability in that the Class Vehicles suffer from the defects referenced herein and thus were not in merchantable condition when Plaintiff and class members purchased or leased the Class Vehicles, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purposes for which such vehicles are used. Specifically, the Class Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because the Class Vehicles suffer from a Windshield Defect that can make driving unreasonably dangerous.

99.     As a result of Defendant's breach of the applicable implied warranties, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.  Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

## THIRD CAUSE OF ACTION
**Breach of Express Warranty under Tex. Bus. & Com. Code Ann. § 2.313**

100.   Plaintiff incorporates by reference all of the above paragraphs of this

49

Complaint as though fully stated herein.

101.   In connection with the sale or lease of the Class Vehicles to Plaintiff and Class members, Defendant provided Plaintiff and class members with a New Vehicle Limited Warranty, under which it agreed to repair or replace original components found to be defective in material or workmanship within the fist 60 months or 60,000 miles in service, whichever comes first.

102.   Plaintiff and Class members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles and Defendant's warranties were part of the basis of the bargain.

103.   Plaintiff and Class members submitted their Vehicles for warranty repairs as referenced herein.  Defendant failed to comply with the terms of the express written warranty provided to each Class member, by failing and/or refusing to repair the Windshield Defect under the vehicle's warranty as described herein.

104.   Plaintiff and Class members have given Defendant reasonable opportunities to cure said defect, but Defendant has been unable and/or has refused to do so within a reasonable time.

105.   As a result of said nonconformities, Plaintiff and Class members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

106.   Plaintiff and Class members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Plaintiff's and Class members'

acceptance of the Class Vehicles.

107.    Plaintiff and Class members would not have purchased or leased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that Class Vehicles contained the Windshield Defect.

108.    As a direct and proximate result of the willful failure of Defendant to comply with its obligations under the express warranties, Plaintiff and Class members have suffered actual and consequential damages.  Such damages include, but are not limited to, the loss of the use and enjoyment of their vehicles, and a diminution in the value of the vehicles containing the defects identified herein.

## FOURTH CAUSE OF ACTION
### Breach of Implied and Express Warranties Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.*

109.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

110.    Plaintiff and members of the Class are each a "consumer" as defined in 15 U.S.C. § 2301(3).

111.    Defendant is a "supplier" and "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

112.    The Class Vehicles are each a "consumer product" as defined in 15 U.S.C. § 2301(6).  15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with the written and

51

implied warranties.

113.   15 U.S.C. § 2304(a)(1) requires Defendant, as a warrantor, to remedy any defect, malfunction or nonconformance of the Class Vehicles within a reasonable time and without charge to the Plaintiff and Class members.

114.   The Defendant's sale of the defective Class Vehicles and its failure and/or refusal to repair the Class Vehicles' Windshield Defect within the applicable warranty period constitutes a breach of the written and implied warranties applicable to the Class Vehicles.

115.   Despite repeated demands, Defendant has failed to remedy the Class Vehicles' defects within a reasonable time, and/or a reasonable number of attempts, thereby breaching the written and implied warranties applicable to the Class Vehicles.

116.   As a result of Defendant's breaches of the written and implied warranties, and Defendant's failure to remedy the same within a reasonable time, Plaintiff and class members have suffered damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, pray for judgment against Defendant as follows:

      a.  An order certifying the proposed Class, designating Plaintiff as named representative of the Class, and designating the undersigned as Class Counsel;

      b.  An order approving revocation of acceptance of the Class Vehicles;

52

c.  Money damages, in the form of a refund of the full contract price, including trade-in allowance, taxes, fees, insurance premiums, interest, and costs, and a refund of all payments made by Plaintiff and class members on the subject contracts;

d.  Equitable relief including, but not limited to, replacement of the Class Vehicles with new vehicles, or repair of the defective Class Vehicles with an extension of the express warranties and service contracts which are or were applicable to the Class Vehicles, in the event that Plaintiff is  not found to be entitled to revocation;

e.  A declaration requiring Defendant to comply with the various provisions of the state and federal consumer protection statutes herein alleged and to make all the required disclosures;

f.  Incidental and consequential damages;

g.  Punitive damages;

h.  Reasonable attorneys' fees and costs;

i.  Pre-judgment and post-judgment interest, as provided by law;

j.  Plaintiff demands that Defendant perform a recall, and repair all Class Vehicles; and

k.  Such other and further relief as this Court deems just and proper.

1

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

2

3    DATED:  August 27, 2020                    TRINETTE G. KENT

4
                                              By:   /s/   Trinette G. Kent
5                                             Trinette G. Kent, Esq.
                                              Lemberg Law, LLC
6                                             *Attorneys for Plaintiff*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

54

CLASS ACTION COMPLAINT